Bonnie MacNaughton (SBN 107402)
Max Hensley (*pro hac vice pending*)
Jordan Clark (*pro hac vice pending*)
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045
Telephone:     (206) 622-3150
Facsimile:      (206) 757-7700
Email:          bonniemacnaughton@dwt.com
                maxhensley@dwt.com
                jordanclark@dwt.com

Eric Walters (SBN 151933)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California  94111
Telephone:     (415) 276-6500
Facsimile:      (415) 276-6599
Email:          ericwalters@dwt.com

Attorneys for Plaintiff
MICROSOFT CORPORATION

## IN THE UNITED STATES DISTRICT COURT

## THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>          Plaintiff,<br><br>     v.<br><br>GOLDAH.COM NETWORK TECHNOLOGY CO., LTD.; CHANGSHA XUNYOU NETWORK TECHNOLOGY CO., LTD.; HUNAN YIGIYOU TECHOLOGY CO., LTD.; G4P LIMITED; TAO LI; and DOES 1-20,<br><br>          Defendants. | Case No. 5:17-cv-2896<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE MOTION FOR EXPEDITED DISCOVERY, TEMPORARY RESTRAINING ORDER, AND AUTHORIZATION FOR ELECTRONIC SERVICE OF PROCESS**<br><br>Date:<br>Time:<br>Department: |

# I.      INTRODUCTION

Defendants, through their website goldah.com and other associated sites ("Goldah"), are engaged in the international trafficking of stolen Microsoft Account ("MSA") credentials, together with fraudulently obtained virtual gaming currencies for the Xbox video game console.  These virtual gaming currencies are commonly referred to as "Points," "Coins," "Credits," or "Stored Value," among other things (collectively, "virtual gaming currencies").  Compl. ¶ 1.  Based on all available information, Microsoft believes that Defendants are located in China.  Beckley Decl. ¶ 24.

In order to perpetrate their scheme, Defendants unlawfully obtain stolen MSA credentials and use those credentials to gain unauthorized access to MSAs and the account holders' linked credit cards.  In addition to gaining unauthorized access to legitimate account holders' MSAs, Defendants also fraudulently create MSAs with false identities and register stolen credit cards on the accounts which they use to purchase virtual gaming currencies.  Using Goldah's internet sales platform, Defendants globally advertise and sell access to the MSAs, together with fraudulently obtained virtual gaming currencies, reaping millions of dollars from their illegal scheme.  Compl. ¶¶ 2-5.

Microsoft has brought this lawsuit to: 1) protect its customers' MSAs and related payment instruments from Defendants' illegal activities; and 2) seek redress for the significant financial and other damages caused to Microsoft by the Defendants' unlawful scheme.  Compl. ¶ 6.

In its Complaint filed concurrently with this motion, Microsoft asserts claims against Defendants for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"), Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"), Lanham Act, 15 U.S.C. § 1051 *et seq.*, and for common law fraud, conversion, and unjust enrichment.  Microsoft seeks injunctive relief prohibiting Defendants from continuing their illegal scheme, restitution, statutory penalties, an accounting, and the imposition of a constructive trust.  Compl. ¶¶ 7, 77-83.

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF EX PARTE MOTION
Case No. 5:17-cv-2896

By this motion, Microsoft seeks the following temporary relief in order to prevent the ongoing and irreparable harm caused by Defendants to Microsoft's business, intellectual property, reputation and goodwill, customers, partners, and the public at large:

1. an order granting expedited third-party discovery to *identify the additional parties* perpetrating Defendants' scheme and *locate assets* subject to this Court's jurisdiction;

2. a temporary restraining order *freezing Defendants' assets* in the United States derived from their illegal activities;

3. an order authorizing Microsoft to complete *service of process by email* on the known (non-Doe) Defendants;

4. an *order to show cause* as to why a preliminary injunction should not be entered restraining Defendants' illegal activities.

Absent the relief requested in this motion, the ongoing harm caused by Defendants will continue and Defendants' illicit proceeds (to which Microsoft is legally entitled) will likely be transferred beyond the jurisdiction of this or any other U.S. court.  Neither Defendants nor any third-party will be unduly prejudiced by granting the requested relief.

## II.     FACTS

### A.     Microsoft's Xbox Platform

Microsoft launched the Xbox video game console in 2001.  It quickly became one of the most popular video game platforms in the world.   Along with the original Xbox console (sold from 2001 to 2009), Microsoft created and sold two updated generations: the Xbox 360 (sold from 2005 to 2016), and the Xbox One (launched in 2013).   Users of any of these consoles can play a variety of games offered by Microsoft and third-party game developers.   The most common way for an Xbox user to purchase Xbox games, whether developed by Microsoft or a third-party game developer, is on Microsoft.com, Microsoft's Windows 10 Store, or directly through the Xbox console.  Compl. ¶ 23; Beckley Decl. ¶ 5.

In addition to selling the games themselves, Microsoft and third-party game developers sell various types of virtual gaming currencies which allow users to enjoy their Xbox gaming experience with upgrades or other enhancements.  Xbox users' virtual gaming currencies are

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF EX PARTE MOTION
Case No. 5:17-cv-2896

deposited in their MSAs where they are available to purchase a wide array of items associated with their Xbox games.  MSAs and their deposited virtual gaming currencies are personal to the user and their transfer or sale to third parties is not permitted.  Compl. ¶ 24; Beckley Decl. ¶ 6.

### B.    Defendants' Illegal Enterprise

In late 2016, Microsoft investigators became aware that Defendants, through Goldah, were selling virtual gaming currencies for suspiciously low prices for the following popular Microsoft and third-party games, among others:  Aion US, ArcheAge, Blade and Soul, Dofu-s, Elder Scrolls Online, FIFA 14, FIFA 15, FIFA 16, FIFA 17, FIFA 18, Final Fantasy XIV, Forza Horizon 3, Guild Wars 2, League of Legends, Madden NFL 17, Madden NFL 18, NBA 2K16, NBA 2K17, NBA 2K18, NBA Live Mobile, NeverWinter, NHL 17, NHL 18, Path of Exile, Pokemon GO, Revelation Online, Rift EU, Rift US, Runescape, Swtor EU, Swtor US, Tera US, Trove, World of Warcraft EU, and World of Warcraft US.  Compl. ¶ 25; Beckley Decl. ¶ 7.

Microsoft promptly undertook an investigation which included test purchasing virtual gaming currencies from Goldah.  This investigation identified the following websites as connected Defendants: www.goldah.com, www.goldah.net, www.fifaah.com, www.fifacoinsnl.com, and www.upitems.com.  Compl. ¶ 26; Beckley Decl. ¶ 8.  Specifically, from October 25, 2016, to January 24, 2017, Microsoft investigators made a series of test purchases of MSAs with virtual gaming currencies— three test purchases from fifaah.com, and two test purchases each from goldah.com and upitems.com.  Beckley Decl. ¶ 9.  On three occasions, Defendants sold Microsoft investigators access to hijacked MSAs with virtual gaming currencies fraudulently purchased with credit cards that were either stolen or belonged to the authorized MSA holders.  On four occasions, Defendants also sold the investigators access to MSAs that we believe were created by Defendants using fictitious identities and registered with stolen credit cards.  Compl. ¶ 26; Beckley Decl. ¶ 10. The payments for the test purchases were all made to Defendant Goldah's credit card merchant account.  All of this was done without the knowledge or permission of Microsoft or the authorized MSA holders and with the intent to steal virtual gaming currencies for resale.  Compl. ¶ 26.

Microsoft's test purchases from Goldah demonstrate that Defendants are engaging in a systematic pattern and practice of unlawfully obtaining stolen MSA credentials, using those

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF EX PARTE MOTION
Case No. 5:17-cv-2896

credentials to fraudulently gain access to MSAs and the authorized MSA holders' linked credit cards, changing the credentials in order to hijack the MSAs, and then unlawfully purchasing virtual gaming currencies with the credit cards.  Defendants then sell access to the MSAs, together with the fraudulently obtained virtual gaming currencies, through Goldah.  Compl. ¶ 28; Beckley Decl. ¶¶ 7-20.

As part of the "Microsoft Runs on Trust" commitment to its customers to provide a safer digital world, Microsoft has developed highly sophisticated fraud detection systems.  In this case, these systems have successfully detected and prevented tens of thousands of attempts by Defendants to gain unauthorized access to MSAs in order to purchase virtual gaming currencies with the authorized MSA holders' credit cards.  However, despite these efforts, because Defendants unlawfully obtained account credentials previously compromised outside of Microsoft's systems and used those credentials to gain access to the MSAs, Defendants were able to complete nearly $2 million in fraudulent purchases of virtual gaming currencies.  Microsoft has issued customer refunds or has received chargebacks from the credit card issuing banks for all of these unauthorized and fraudulent purchases.  Compl. ¶ 29; Beckley Decl. ¶ 21.

## III.     ARGUMENT

### A.     This Court Has Personal Jurisdiction over Defendants.

As set forth in the Complaint, this Court has personal jurisdiction over Defendants because they purposefully directed their activities and consummated transactions in California in carrying out their illegal scheme and because their scheme is inflicting harm on businesses and consumers in California.  Compl. ¶ 20.  California's long-arm statute is coextensive with the reach of federal due process.  Cal. Civ. Proc. Code § 410.10.  Therefore, to exercise personal jurisdiction over a nonresident, defendant need only have "certain minimum contacts" with the relevant forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).  This means "defendant's conduct and connection with the forum State must be such that the defendant should reasonably anticipate being haled into court there." *Sher v. Johnson,* 911 F.2d 1357, 1361 (9th Cir. 1990) (internal quotation marks omitted).

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF EX PARTE MOTION
Case No. 5:17-cv-2896

This Court has specific jurisdiction over Defendants because their "contacts with the forum give rise to the cause of action before the court." *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001).  The Ninth Circuit evaluates specific jurisdiction using a three-part test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  Under this test, the purposeful availment prong, requires a showing that "defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205-06 (9th Cir. 2006) (quoting *Calder v. Jones*, 465 U.S. 783 (1984)).  "If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state." *Id.* at 1207.

These jurisdictional requirements are met here.  Defendants are unlawfully selling access to MSAs, together with fraudulently obtained virtual gaming currencies, and using Microsoft's trademarks to advertise those sales.  Compl. ¶¶ 3, 20; Beckley Decl. ¶ 20.  Their acts are aimed at California in several ways.  First, on at least one occasion (and likely many more), Defendants sold a hijacked MSA, together with fraudulently obtained virtual gaming currencies, to a consumer in California.  Compl. ¶ 20; Beckley Decl. ¶ 10.  Second, to carry out their scheme, Defendants have entered into an ongoing contractual relationship with a California company, PayPal Holdings, Inc.  Compl. ¶ 20; Beckley Decl. ¶ 11.  Pursuant to this contract, each of the thousands of Defendants' fraudulent transactions flow through California.  *Id.*[1]  Even today, some

---

[1] To the extent the Court believes additional facts are necessary under this element, Microsoft respectfully suggests that the expedited discovery it seeks from PayPal in this Motion will allow it to establish further details of Defendants connection to California, including the duration of this

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF EX PARTE MOTION
Case No. 5:17-cv-2896

of Defendants' ill-gotten gains are being held in California by PayPal for the benefit of Defendants. *Id.* These acts in California cause harm to Microsoft, its customers, and the public. *Id.*; *see, e.g.*, *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1179 (N.D. Cal. 2015) (willful copyright infringement on website combined with false representations to consumer in California support specific jurisdiction over out-of-state defendants); *Boschetto v. Hansing*, 539 F.3d 1011, 1019 (9th Cir. 2008) ("[C]ases that have found that jurisdiction was proper based on eBay sales relied heavily on the fact that the defendant was using the platform as a broader vehicle for commercial activity."). Further, in carrying out these acts in California, Defendants are purposefully availing themselves of the benefit of doing business in California. Finally, Microsoft's claims arise out of this activity, and there is nothing unreasonable about exercising jurisdiction here.

### B. Microsoft Is Entitled to Expedited Discovery to Identify Defendants and Their Illicit Proceeds.

Although discovery ordinarily opens after the parties have held a Rule 26(f) conference, courts have broad discretion to allow expedited discovery where "good cause" exists for doing so. Fed. R. Civ. P. 26(d) & (f); *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275 (N.D. Cal. 2002). "Good cause exists where the need for expedited discovery, in consideration for the administration of justice, outweighs the prejudice to the responding party." *First Option Mortg., LLC v. Tabbert*, 2012 WL 1669430, at *1 (D. Nev. May 11, 2012) (internal quotation marks omitted).

This standard is easily met in cases such as this one where the Doe Defendants have yet to be identified. Where some defendants are unknown at the time of filing suit, the Ninth Circuit recognizes that plaintiffs "should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th

---

practice and the number of transactions taking place in California as a result. *See* Part II.B., *supra*; *Butcher's Union Local No. 498, United Food & Comm'l Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir.1986) ("Discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.") (internal quotation marks omitted).

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF EX PARTE MOTION
Case No. 5:17-cv-2896

Cir. 1980).  To satisfy this test, courts in this District hold that plaintiff need only show it "has in good faith exhausted traditional avenues for identifying a civil defendant pre-service." *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578 (N.D. Cal. 1999).

Microsoft has done so here.  As set forth in the attached Declaration of Jeremy Beckley, Microsoft's investigation identified four corporate entities and one individual linked to Goldah, but was unable through publicly available information to identify the specific relationships between those entities or the identity of any other companies or individuals involved in this scheme.  Beckley Decl. ¶ 22.  Microsoft believes that the discovery it requests—targeted requests to known third parties which are subject to this Court's jurisdiction—will enable it to identify those unidentified parties.  And as set forth below, Microsoft's claims can easily withstand a motion to dismiss, and in fact, Microsoft is likely to prevail on each claim.  *See, e.g.*, *Nat'l Prods., Inc. v. Does 1-4*, 2016 WL 2989971, at *2 (W.D. Wash. May 23, 2016) (applying *Columbia Insurance* test and granting expedited discovery); *Cobbler Nevada, LLC v. Does 1-32*, 2015 WL 5315948, at *3 (W.D. Wash. Sept. 11, 2015) (same).

Microsoft's expedited discovery requests are appropriate and necessary for a second reason: to effectuate the injunctive relief sought in the remainder of this Motion.  *See First Option*, 2012 WL 1669430, at *4.  Absent discovery, it is highly likely that proceeds derived from Defendants' illegal enterprise currently unknown to Microsoft but subject to Microsoft's claims for restitution, an accounting, and imposition of a constructive trust (and thereby subject to the asset freeze requested below) will be transferred beyond the scope of this Court's jurisdiction.  Beckley Decl. ¶ 22.  This is a particularly compelling reason when combined with Microsoft's lack of information about the identity and location of all Defendants in this matter.  *See, e.g.*, *SATA GmbH & Co. Kg v. Wenzhou New Century Int'l, Ltd.*, 2015 WL 6680807, at *11 (C.D. Cal. Oct. 19, 2015) (granting TRO and expedited discovery against foreign counterfeiter).

Finally, Microsoft's proposed expedited discovery is appropriately narrow, both in scope and as to the third parties Microsoft wishes to serve.  Microsoft's investigation to date has established that Defendants use PayPal in furtherance of their scheme.  Compl. ¶ 20; Beckley Decl. ¶ 11.  As of this filing, PayPal is the only third party on whom Microsoft seeks authority to

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF EX PARTE MOTION
Case No. 5:17-cv-2896

serve a subpoena, a copy of which is attached as Exhibit 1 to the Declaration of Bonnie MacNaughton.  Depending on the information received from PayPal, Microsoft requests authority to serve additional requests in a similar form on additional financial institutions or other entities that Defendants are using to carry out their scheme or store the proceeds of their fraud.  This request is targeted to accomplish the two goals authorized by law as set forth above—to identify Defendants **and** their assets.

> ### C.    Microsoft Is Entitled to a Temporary Restraining Order Freezing Defendants' Illicit Proceeds.

Temporary relief is available when a plaintiff can establish (1) a likelihood of success on the merits; (2) that irreparable harm is likely in the absence of preliminary relief; (3) that the balance of equities tips in the plaintiff's favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); Fed. R. Civ. P. 65(b)(1); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839-40 (9th Cir. 2001).  In the Ninth Circuit, "[h]ow strong a claim on the merits is enough depends on the balance of harms: the more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief."  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1133 (9th Cir. 2011).  Here, Microsoft meets all the elements justifying temporary relief.

> ### 1.    Microsoft Is Likely to Succeed on the Merits of Its Claims.

Microsoft is likely to succeed on the merits of all of its claims against Defendants. However, because injunctive relief is not an available remedy for violations of RICO, this motion is based on Microsoft's claims for violations of the CFAA, the Lanham Act, and for common law fraud, conversion, and unjust enrichment.

> ### a.    CFAA

Microsoft's CFAA claim against Defendants is based on violations of 18 U.S.C. §§ 1030(a)(4) and (a)(6).  Section 1030 (a)(4) requires proof that Defendants "(1) accessed a 'protected computer,' (2) without authorization or exceeding such authorization that was granted, (3) 'knowingly' and with 'intent to defraud,' and thereby (4) 'further[ed] the intended fraud and obtain[ed] anything of value,' causing (5) a loss to one or more persons during any one-year

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF EX PARTE MOTION
Case No. 5:17-cv-2896

period aggregating at least $5,000 in value." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1132 (9th Cir. 2009) (citing 18 U.S.C. § 1030(a)).  Microsoft is likely to succeed on the merits of these claims because Microsoft has compelling evidence that Defendants are accessing Microsoft's computer systems without authorization and hijacking the MSAs in order to fraudulently obtain virtual gaming currencies for resale.  Defendants are also accessing Microsoft's computer systems without authorization and creating MSA with fictitious identities and stolen credit cards. Microsoft is suffering financial losses in the millions of dollars from Defendants' scheme as well as damages from the harm to its account holders.  Beckley Decl. ¶ 21.

Section 1030(a)(6) "prohibits a person from fraudulently trafficking in 'any password or similar information through which a computer may be accessed without authorization' where such trafficking affects interstate or foreign commerce."  *Oracle Am., Inc. v. Serv. Key, LLC*, 2012 WL 6019580, at *5 (N.D. Cal. Dec. 3, 2012) (quoting 18 U.S.C. § 1030(a)(6)).  As revealed by the multiple test purchases conducted by Microsoft's investigator, Defendants' activities fit squarely within this conduct as for each test purchase, they provided the investigator with a username and password to access the hijacked MSA.  Beckley Decl. ¶¶ 13(b), 14(b), 17(b).  These test purchases affected interstate or foreign commerce since they were conducted over the internet by investigators in both California and Pennsylvania and involved MSAs located on computer systems in Washington.  *Id.* ¶ 9.  In addition, based on all available information about the Defendants' locations, their emails were very likely sent to the United States from China.  *Id.* ¶¶ 13(c), 14(c), 17(c).  For all these reasons, Microsoft is likely to prevail on both prongs of its CFAA claim.

### b.  Lanham Act

The Lanham Act creates a cause of action for trademark infringement where trademark misuse confuses or deceives consumers, or where the infringement misrepresents the nature and qualities of the products sold.  15 U.S.C. § 1125.  Microsoft alleges violations of both prongs, and is thus entitled to both monetary and injunctive relief under this statute:  "The likelihood of public confusion … will warrant injunctive relief against unfair competition."  *DC Comics v. Towle*, 989 F. Supp. 2d 948, 960 (C.D. Cal. 2013), *aff'd*, 802 F.3d 1012 (9th Cir. 2015); *ITEX Corp. v. Glob.*

9

*Links Corp.*, 90 F. Supp. 3d 1158, 1174 (D. Nev. 2015) ("Nothing is clearer in the law of commercial speech than that false or misleading commercial speech is clearly subject to restraint.") (internal quotation marks omitted).

   "To establish a claim for either trademark infringement or false designation of origin under § 43(a)(1)(A), 15 U.S.C. § 1125(a)(1)(A), a plaintiff must prove that the defendant (1) used in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services in question." *Luxul Tech. Inc.*, 78 F. Supp. 3d at 1170 (citing *Freecycle Network, Inc. v. Oey,* 505 F.3d 898, 902-04 (9th Cir. 2007)).

   Courts routinely find these elements are met where plaintiff establishes that—as Microsoft has pled and will easily prove here—defendant has used a trademark in connection with the sale of fraudulent, counterfeit, or otherwise unauthorized merchandise on the internet.  For example, in *Adobe Systems Inc. v. A & S Electronics., Inc.*, 153 F. Supp. 3d 1136 (N.D. Cal. 2015), the Court denied defendant's motion to dismiss where Adobe alleged trademark infringement based on the fact that "Defendants website advertised and sold Adobe products bearing Adobe's protected marks which they had no right to distribute." *Id.* at 1142, 1148.  Similarly, in *Spy Optic, Inc. v. Alibaba.com, Inc.*, 163 F. Supp. 3d 755, 765 (C.D. Cal. 2015), the Court considered an allegation against a company that improperly used a registered mark in the design of a website. The Court found that "by directing consumers to allegedly-infringing sellers, Defendant creates a likelihood that consumers would be confused as to the origin of the allegedly-infringing products—instead of buying authentic Spy products, consumers would unknowingly purchase counterfeit merchandise." *Id.* at 765 (citing *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1062-63 (9th Cir. 1999)).

   In this case, Defendants are using Microsoft's Xbox, Xbox 360, and Xbox One trademarks, without permission or license, to advertise and promote the sale of their unlawful products, specifically, 1) hijacked MSAs paired with fraudulently obtained virtual gaming currencies purchased with credit cards belonging to the authorized MSA holders, or 2) fraudulently created MSAs paired with unlawfully obtained virtual gaming currencies purchased with stolen credit

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF EX PARTE MOTION
Case No. 5:17-cv-2896

cards.  Compl. ¶ 3, 26, 30, 31.  Screenshots of Defendants' use of Microsoft's trademarks are attached as Ex. A to the Beckley Declaration.  This use of Microsoft's marks is likely to confuse consumers into believing that what they are buying are legitimate products, which they are not. Compl. ¶¶ 54-62.

### c.     Fraud

The elements of fraud in California are:  "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990, 22 Cal. Rptr. 3d 352 (2004).

Defendants are making false representations to Microsoft by accessing MSAs, hijacking them for their own use, and fraudulently purchasing virtual gaming currencies from Microsoft with credit cards linked to those accounts which they have no legal right to use.  Compl. ¶¶ 64-65. Defendants' representations are false, they are aware of that falsity, and make their statements with the intent to defraud Microsoft and the public.  *Id.*; *see Embotelladora Electropura S.A. De C.V. v. Accutek Packaging Equip. Co*, 2016 WL 4943049, at *4 (S.D. Cal. Sept. 15, 2016) (intent to defraud may be pled generally).

Microsoft has relied on Defendants' misrepresentations that they are authorized MSA holders when it permits modifications to the user names and passwords and purchases with the linked credit cards.  *Id.* at ¶ 65.  Similarly, consumers in California and around the world purchased virtual gaming currencies from Defendants based upon Defendants holding themselves out to be legitimate sellers of virtual gaming currencies on the Websites.  *Id* ¶ 20; *see Robinson Helicopter*, 34 Cal. 4th at 992-23 (intentional frauds that violate public policy and risk harm to the public not barred by economic loss rule).

Finally, as described above, Microsoft is being harmed by Defendants' fraudulent conduct by millions of dollars of bank charge backs and consumer refunds, as well as the ongoing and irreparable harm to Microsoft's goodwill and reputation caused by the Defendants' interactions with consumers.  Beckley Decl. ¶ 21.

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF EX PARTE MOTION
Case No. 5:17-cv-2896

### d.  Conversion

"To allege conversion, a plaintiff must show: (1) it possessed property, (2) the defendant disposed of the property in a manner inconsistent with the plaintiff's property rights, and (3) damages." *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016) (applying California law).  "Conversion is a strict liability tort. The foundation of the action rests neither in the knowledge nor the intent of the defendant.  Instead, the tort consists in the breach of an absolute duty; the act of conversion itself is tortious.  Therefore, questions of the defendant's good faith, lack of knowledge, and motive are ordinarily immaterial." *Regent All. Ltd. v. Rabizadeh*, 231 Cal. App. 4th 1177, 1181, 180 Cal. Rptr. 3d 610, 612 (2014) (quotation omitted).

California "courts have recognized that property is a broad concept that includes every intangible benefit and prerogative susceptible of possession or disposition." *Welco Elecs., Inc. v. Mora*, 223 Cal. App. 4th 202, 211, 166 Cal. Rptr. 3d 877, 883-84 (2014) (internal quotation marks omitted).  Defendants are wrongfully taking property from Microsoft through their fraudulent scheme.  Similarly, Defendants are causing Microsoft to incur a debt to its customers and to the various financial institutions whose credit cards are compromised in completing the fraud.  This imposition of a debt also constitutes acts of conversion.  *Id.* at 884 (recognizing claim of conversion where "Defendant obtained the money from the credit card company. As a result, plaintiff became indebted to the credit card company").  These acts caused Microsoft the damages set forth above.  Compl. ¶ 68-71.[2]

### e.  Unjust Enrichment

The common law theory of unjust enrichment requires a defendant "to make restitution if he is unjustly enriched at the expense of another. A person is enriched if he receives a benefit at another's expense." *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 51, 57 Cal. Rptr. 2d 687 (1996) (citing Restatement of the Law of Restitution, § 1, p. 12.).  The definition of "benefit" is broad: "The term

---

[2] Defendants will not be able to escape liability for conversion based on a defense that they were not the specific party responsible for taking the goods from Microsoft.  *See Regent All.*, 231 Cal. App. 4th at 1181 ("The rule of strict liability applies equally to purchasers of converted goods, or more generally to purchasers from sellers who lack the power to transfer ownership of the goods sold.")

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF EX PARTE MOTION
Case No. 5:17-cv-2896

"benefit" denotes any form of advantage.  Thus, a benefit is conferred not only when one adds to the property of another, but also when one saves the other from expense or loss." *Id.*  In California, this claim requires proof of two elements: "receipt of a benefit and unjust retention of the benefit at the expense of another." *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726, 91 Cal. Rptr. 2d 881 (2000); *see also Lucky Auto Supply v. Turner*, 244 Cal. App. 2d 872, 885, 53 Cal. Rptr. 628 (1966) ("[T]he obligation to do justice rests upon all persons, natural and artificial; if one obtains the money or property of others without authority, the law, independently of express contract, will compel restitution or compensation.") (quotation omitted).[3]

Here, the evidence is compelling that Defendants are receiving illicit proceeds from their scheme.  Beckley Decl. ¶¶ 6-20.  In addition, because the virtual gaming currencies are fraudulently obtained, Defendants are avoiding the cost of purchasing them.  It is equally clear that this cost is coming at Microsoft's expense because Microsoft is either refunding customers or the transactions are being charged back by the issuing banks for the credit cards.  Beckley Decl. ¶¶ 13(d), 14(d), 15(d), 16(d), 17(d), 18(d), 19(d).  Defendants' continued possession of these benefits is unjust because the benefits are derived from a fraud scheme against Microsoft, its customers, and the general public.

### 2. Microsoft Will Suffer Irreparable Injury.

Monetary damages are inadequate to compensate Microsoft for its injuries arising from Defendants' continuing trafficking of access to MSAs and fraudulently obtained virtual gaming currencies.  First, Microsoft has invested years in building its business and promoting its marks and will suffer substantial and irreparable harm if Defendants are not enjoined from continuing to

---

[3] Some California courts have held that unjust enrichment is not a stand-alone cause of action, but merely a remedy.  *See, e.g.*, *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793, 131 Cal. Rptr. 2d 347 (2003) ("The phrase 'Unjust Enrichment' does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so.").  However, recognizing that split in California law, the Ninth Circuit has permitted it to be brought as a separate cause of action where appropriately pled.  *ESG Capital Partners*, 828 F.3d at 1038-39  (holding "unjust enrichment as an independent cause of action" had been sufficiently pled); *see also Dorr v. Yahoo! Inc.*, 2007 WL 2215445, at *2 (N.D. Cal. July 30, 2007) ("California law recognizes a cause of action for restitution (sometimes also called unjust enrichment), a quasi-contractual form of common count for money had and received to recover money paid by fraud or mistake.").

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF EX PARTE MOTION
Case No. 5:17-cv-2896

use those marks to sell hijacked and fictitiously created MSAs paired with fraudulently obtained virtual gaming currencies.  Compl. ¶¶ 54-62.  "If an injunction were not granted, Plaintiff would suffer irreparable injury from the ongoing damages to its goodwill and diversion of customers to counterfeit services."  *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1084 (C.D. Cal. 2012).  In *Toyo Tire & Rubber Co. v. Kabusikiki Kaisha Tokyo Nihoon Rubber Corp*, 2015 WL 6501228 (D. Nev. Oct. 26, 2015), the Court found irreparable harm (and granted injunctive relief) after comparing a plaintiff's "considerable time and effort building its reputation" to Defendants who "merely piggy-backed off of Toyo's success" by, among other things, marketing "counterfeit products on various deceptively-named websites."  *Id.* at *4; *see also Int'l Kennel Club of Chi., Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1091 (7th Cir. 1988) (affirming "district court's determination that if an injunction did not issue the plaintiff would continue to incur damage to its good will and reputation").  Here, Defendants' activities have caused repeated consumer complaints to Microsoft, thereby creating exactly this form of harm to its reputation in the marketplace.  Beckley Decl. ¶¶ 13(d), 14(d), 15(d), 16(d), 17(d), 18(d), 19(d).

Second, the harm is continuing.  "There is no adequate remedy at law for an ongoing trespass and without an injunction the victim of such a trespass will be irreparably harmed."  *Register.com, Inc. v. Verio, Inc.*, 126 F. Supp. 2d 238, 250 (S.D.N.Y. 2000), *aff'd on other grounds*, 356 F.3d 393 (2d Cir. 2004).  That ongoing harm is exacerbated by Defendants' overseas location and purposefully anonymous operation of their business.  As the Court stated in the *Toyo* case, "[b]ecause Toyomoto has no operations in the United States, it may be difficult or impossible for Toyo to enforce a monetary judgment against it. There is no indication that Toyomoto will cease its infringing activity absent injunctive relief."  *Toyo*, 2015 WL 6501228 at *4 (irreparable harm more appropriate based on Defendants' "failure to appear").  While Microsoft's highly sophisticated detection systems have prevented tens of thousands of Defendants' attempts to gain unauthorized access to MSA, Defendants have still completed nearly $2 million in fraudulent purchases of virtual gaming.  Compl. ¶ 29; Beckley Decl. ¶ 21.  This fraudulent activity is highly profitable for Defendants and there is every reason to believe they will

continue their illegal activity absent court intervention.  Therefore, the injunctive relief requested by this motion is necessary to prevent Microsoft from continuing to suffer irreparable harm.

### 3.       The Balance of Equities Strongly Favors Microsoft.

The harm caused by permitting Defendants to continue operation of their scheme substantially outweighs any harm Defendants would suffer as a result of an injunction.  Indeed, the only harm Defendants will suffer is the loss of revenue from their illegal scheme to defraud Microsoft and its customers.  Microsoft has established a strong likelihood of success on the merits of its claims.  Meanwhile, Microsoft, its customers, and the broader public continue to suffer irreparable harm from this illegal scheme.

In contrast, Defendants have no legitimate interest in continuing to perpetrate their fraudulent scheme.  *See, e.g.*, *Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*, 534 F. App'x 633, 636 (9th Cir. 2013) (fact that injunction might drive defendant out of business irrelevant when defendant's business premised on infringing use of plaintiff's mark).  A defendant who has "buil[t] a business model based upon a clear violation of the property rights of the plaintiff cannot defeat a preliminary injunction by claiming the business will be harmed if the defendant is forced to respect those property rights."  *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1069 (N.D. Cal. 2000); *Windsurfing Int'l Inc. v. AMF, Inc.,* 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected.").  Because the very foundation of Defendants' business is built on fraud, theft, and deception, the balance of harms weighs strongly in Microsoft's favor.

Similarly, Defendants have no interest in continuing to access the unjustly obtained proceeds of their scheme.  Microsoft's harm, on the other hand, is the continued tarnishing of its reputation and goodwill in the marketplace, as well as the ongoing harms to both its customer base and its direct monetary losses.  Further, any potential harm to Defendants if their activities are ultimately found proper is purely monetary and thus curable.  Given "the probable outcome of this action, this is a loss which [Defendants] may justifiably be called upon to bear." *Corning Glass*

*Works v. Jeanette Glass Co.*, 308 F. Supp. 1321, 1328 (S.D.N.Y. 1970), *aff'd*, 432 F.2d 784 (2d Cir. 1970).

### 4.   A Temporary Restraining Order Is in the Public Interest.

"Trademarks protect the public from confusion by accurately indicating the source of a product.  They preserve a producer's good will 'in order that the purchasing public may not be enticed into buying A's product when it wants B's product.'"  *Interplay Entm't Corp. v. TopWare Interactive, Inc.*, 751 F. Supp. 2d 1132, 1138 (C.D. Cal. 2010) (quoting *State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 715 (9th Cir. 2005).  Thus, the public has an interest in protecting them.  *Id.*; *see also Seed Servs., Inc. v. Winsor Grain, Inc.*, 868 F. Supp. 2d 998, 1005 (E.D. Cal. 2012) (granting extraterritorial injunction because the "public interest in preventing trademark infringement is avoiding confusion in the marketplace").  In cases like this one, courts routinely find "the public has a strong interest in being free from the confusion caused by unauthorized use of" trademarks.  *Wetzel's Pretzels, LLC v. Johnson*, 797 F. Supp. 2d 1020, 1029 (C.D. Cal. 2011).  The same is true here; the public interest supports issuing the injunctive relief sought here in order to protect Microsoft, its customers, and the public from deception.  Furthermore, Microsoft customers around the world have a compelling and deeply personal interest in the security of their account credentials and credit cards and in stopping Defendants' continuing acts of fraud conversion and unjust enrichment.

### 5.   This Court Has the Power to Freeze Defendants' Illicit Proceeds.

Microsoft has proposed a targeted temporary restraining order, which will halt or limit the ongoing irreparable harm Defendants are causing Microsoft and Microsoft's customers, while ensuring the eventual viability of the equitable relief to which Microsoft is entitled.  This TRO contains two elements: (1) a restraint of Defendants' illicit proceeds; and (2) an Order to Show Cause why Defendants should not be permanently enjoined from selling MSAs loaded with fraudulently obtained virtual gaming currencies.  *See* [Proposed] Order for Expedited Discovery, Temporary Restraining Order, and Authorization for Electronic Service of Process.  These requests fall easily within this Court's broad equitable powers.

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF EX PARTE MOTION
Case No. 5:17-cv-2896

As discussed above, Microsoft has irrefutable evidence of Defendants' ongoing fraudulent activity that will establish the elements of its various claims.  Microsoft is thus entitled to an equitable accounting of Defendants' profits from those wrongful acts and imposition of a constructive trust to hold those profits for the benefit of Microsoft to protect its right to restitution. *See* 15 U.S.C. § 1117.  Under established case law from multiple circuits, including the Ninth Circuit, this Court has the authority under Federal Rules of Civil Procedure 64 and 65, Sections 34 and 35 of the Lanham Act, and the Court's inherent equitable powers to issue an order restraining Defendants' assets to ensure the availability to Microsoft of final and effective equitable relief. *Reebok Int'l, Ltd. v. Marnatech Enters.*, 970 F.2d 552, 558-61 (9th Cir. 1992); *see also Animale Grp. Inc. v. Sunny's Perfume, Inc.*, 256 F. App'x 707, 708-09 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 986-87 (11th Cir. 1995).

For example, in *Reebok International Ltd. v. Marnatech Enterprises Inc.,* 737 F. Supp. 1521 (S.D. Cal. 1989), *aff'd*, 970 F.2d 552 (9th Cir. 1992), the district court granted Reebok a limited restraint of defendants' assets in a trademark infringement dispute to preserve them, thus ensuring the availability of a meaningful accounting after trial.  *Id.* at 1526.  The Ninth Circuit affirmed, holding:  "Because the Lanham Act authorizes the district court to grant Reebok an accounting of [Defendants'] profits as a form of final equitable relief, the district court had the inherent power to freeze [Defendants'] assets in order to ensure the availability of that final relief." *Reebok*, 970 F. 2d at 559; s*ee also Microsoft Corp. v. U-Top Printing Corp.*, 46 F.3d 1143, at *1 (9th Cir. 1995) (unpublished).

This remedy is not limited to Lanham Act claims, but is available to protect any form of equitable relief.  *F.T.C. v. H. N. Singer, Inc.*, 668 F.2d 1107, 1113 (9th Cir. 1982) (affirming asset freeze where suit filed to obtain "restitution of moneys fraudulently obtained."); *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1364 (9th Cir. 1988); *C.F.P.B. v. Morgan Drexen, Inc.*, 2016 WL 6542861, at *4 (C.D. Cal. May 17, 2016) (asset freeze authorized by suit seeking equitable restitution).  As explained above, Microsoft will be entitled to multiple forms of equitable relief, including restitution, an accounting of Defendants' wrongful profits, and

imposition of a constructive trust at the conclusion of this litigation.  An asset freeze is appropriate here to ensure that those remedies are not merely ineffective formalities.

Even where a freeze is appropriate to protect an equitable remedy, "A party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted." *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009).  Plaintiff can satisfy this standard by showing defendant's history of operating overseas and beyond the reach of a court judgment.  *Reebok*, 737 F. Supp. at 1527 ("conducting such [infringing] business out of the United States" sufficient to establish likelihood of dissipation); *FTC v. Affordable Media, LLC,* 179 F.3d 1228, 1236-37 (9th Cir. 1999) (affirming finding of likelihood of  dissipation "[g]iven the [defendants'] history of spiriting their commissions away to a Cook Islands trust"); *In re Estate of Ferdinand Marcos, Human Rights Litig.*, 25 F.3d 1467, 1480 (9th Cir. 1994) (affirming asset freeze based on foreign locus of assets combined with "pattern and practice of secreting assets through foreign bank accounts").

This is ***precisely*** the type of case where a temporary restraint of illicit proceeds is warranted.  Microsoft has reason to believe that Defendants funnel proceeds of their fraud through PayPal to foreign bank accounts held in China.  Compl. ¶ 20; Beckley Decl. ¶ 11.  Given the illicit nature and pervasiveness of Defendants' illegal business practices, it is virtually guaranteed that as soon as Defendants learn about the existence of this lawsuit, they will repatriate all of their assets currently held in the United States to China to prevent them from being made available to satisfy an award for Microsoft in this case.  Beckley Decl. ¶ 23.   Accordingly, an asset freeze is necessary to ensure that Microsoft is not deprived of potentially its ***only*** opportunity to recover monetary damages from Defendants.

    **D.**    **Microsoft Is Entitled to Effect Service of Process by Registered Electronic Mail.**

Lastly, Microsoft requests permission to serve the named, non-Doe Defendants by registered electronic mail.  Although Defendants operate a high-revenue business selling fraudulently obtained goods to customers around the world, they conduct this business exclusively online and by electronic mail, thereby concealing their true physical addresses and identities.

Beckley Decl. ¶ 22.  Given this purposeful anonymity, Microsoft has been unable to identify the true address of the named Defendants, except for Defendant Changsha.  *Id.*  However, Microsoft is aware of functioning and monitored email addresses used by Defendants in the operation of their business.  *Id.*  Consequently, while it would be extraordinarily difficult—if not impossible—to complete personal service of process on Defendants, it would be eminently achievable to do so by electronic mail.

To eliminate unnecessary technicalities and cost, Rule 4 provides flexibility in the procedures for giving defendants notice of commencement of an action.  Fed. R. Civ. P. 4; 4 C. Wright & A. Miller, Federal Practice & Procedure § 1061, at 315 (4th ed. 2015).  Defendants are, to the best of Microsoft's knowledge, located in China.  *Id.*  Rule 4(f) allows this Court to authorize service of process on an individual in a foreign country by any means not prohibited by international agreement.  Fed. R. Civ. P. 4(f)(3); *Rio Props.*, *Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002).  Both China and the United States are signatories to the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters which states "[t]his Convention shall not apply where the address of the person to be served with the document is not known."  Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil or Commercial Matters, November 15, 1965, Article 1 (Attached as Ex. 2 to the MacNaughton Decl.).  In cases where, like here, the address of defendants cannot be identified, courts in this District have permitted service of process by email. *See, e.g.*, *Chanel, Inc. v. Lin*, 2010 U.S. Dist. LEXIS 61295, at *11-12 n.3 (N.D. Cal. May 7, 2010); *Williams-Sonoma Inc. v. Friendfinder Inc.*, 2007 WL 1140639, at *2 (N.D. Cal. Apr. 17, 2007).

In addition to complying with the Federal Rules, the method of service of process must comport with due process. *Rio Props.*, 284 F.3d at 1016-17.  Due process requires that any service of notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950).  In similar cases, courts have found that service by email is "constitutionally acceptable" to satisfy due process. *Rio Props.*, 284 F.3d

at 1016-17.  In fact, email service is the most reliable way of putting Defendants on notice of this action.  Where, as here, a defendant has made email its only means of contact, courts in this District recognize that service by email not only comports with due process requirements, but is the method of service most likely to reach that defendant.  *Facebook Inc. v. Banana Ads LLC*, 2012 WL 1038752, at *2 (N.D. Cal. Mar. 27, 2012).

Microsoft proposes to serve its Complaint and this Motion (and all attached documents) on the following email addresses, which it has identified as being owned and/or controlled by Defendants[4]:

- 71747601@qq.com
- Support@Goldah.com
- Selltous@Goldah.com
- Pay@Goldah.com
- Support@fifaah.com
- Support@Dpsvip.com

Beckley Decl. ¶ 24 (describing connection between Defendants and each email address above).  Because Defendants use these email addresses and web submission forms to conduct their illicit businesses, including by interacting with customers and peddling their stolen goods, Microsoft has every reason to believe that these email addresses are regularly monitored.  Microsoft proposes to send service via email to each of the unique email addresses, giving these connected Defendants actual notice of this action many times over.  Microsoft will use an online service, RPost (www.rpost.com) that provides proof of authorship, content, delivery, and receipt.  MacNaughton Decl. ¶ 5.  Microsoft will thus be able to provide this Court with confirmation of its completed service should such information be required.

---

[4] To the extent that Microsoft discovers additional methods of contacting Defendants through the expedited discovery requested in this Motion, Microsoft will make similar attempts to complete service of process via those additional email addresses or other forms of contact, should such attempts be required.

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF EX PARTE MOTION
Case No. 5:17-cv-2896

### IV.    CONCLUSION

Defendants are engaged in an ongoing illegal scheme that is causing irreparable and significant damages to Microsoft, MSA holders, and Xbox gaming consumers around the world. Defendants' nefarious techniques include, among other things, wire fraud, computer fraud and abuse, common law fraud, trademark infringement, false advertising, and conversion.  Defendants are being unjustly enriched as a result of their illegal enterprise and are highly likely to relocate their assets outside of the reach of this Court, if given the opportunity to do so.  In order to redress these wrongs, this Court should grant Microsoft's request for expedited discovery, a temporary restraining order, an order to show cause, and authorization to serve process by email.

DATED: May 19, 2017

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP


By: */s/ Bonnie E. MacNaughton*
       Bonnie E. MacNaughton (SBN 107402)
       Max Hensley (*pro hac vice pending*)
       Jordan Clark (*pro hac vice pending*)
       DAVIS WRIGHT TREMAINE LLP
       1201 Third Avenue, Suite 2200
       Seattle, Washington 98101-3045
       Telephone: (206) 622-3150
       Facsimile:  (206) 757-7700

       Eric Walters (SBN 151933)
       DAVIS WRIGHT TREMAINE LLP
       505 Montgomery Street, Suite 800
       San Francisco, California 94111
       Telephone:    (415) 276-6500
       Facsimile:    (415) 276-6599
       Email:        ericwalters@dwt.com

Attorneys for Plaintiff
MICROSOFT CORPORATION

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF EX PARTE MOTION
Case No. 5:17-cv-2896